255 So.2d 5

**CITY OF MOBILE, a Municipal Corporation**

v.

**Otha C. SALTER et al.**

1 Div. 663.

Supreme Court of Alabama.

Nov. 24, 1971.

part, since this is not an issue on this appeal.

5. See Dawson v. Thorpe, 47 Ala.App. 215, 252 So.2d 331.

Edmund R. Cannon, Jr., W. Ramsey McKinney, Jr., Mobile, for appellant.

662

Simon & Wood, Mobile, for appellees.

MERRILL, Justice.

This appeal is from a decree in a declaratory judgment proceeding wherein an ordinance of the City of Mobile levying taxes on real estate in Highpoint Estates was held invalid because it was in conflict with Act No. 18, General Acts of Alabama 1956, p. 279, Second Special Session.

In the spring of 1956, the City of Mobile was sponsoring a bill to annex 64 square miles of new territory which included the Highpoint Estates area. The city commissioners had numerous meetings with the legislative delegation from Mobile County and the delegation agreed to introduce and pass the bill provided the commissioners would agree that no city ad valorem taxes would be levied on the newly annexed ter-

ritory until certain agreed services were furnished to the inhabitants of the area. There was a meeting of the minds and the bill was advertised the required time for a proposed local bill, introduced, passed and after approval on March 16, 1956, was designated Act No. 18.

Section 1 of the bill gave it the name of "the Greater Mobile Act." Section 2 extended the boundaries of the city to include the new 64 square miles. Section 3, which is the crucial point in this litigation, provides in pertinent part:

"Any area which is located within the boundaries of the City of Mobile, as set out in section one [sic] above, but which was not a part of the City of Mobile prior to the passage of this act fixing the above said boundaries, shall not be subject to assessment for ad valorem taxation by the City of Mobile until the said City of Mobile shall make available, furnish or cause to be furnished through any board whose members are appointed by the City of Mobile, to said area and the residents thereof the following municipal services: police protection, fire protection, garbage collection, street lighting, water service, sanitary sewer service, and street maintenance. The city commission of the City of Mobile, each year when it adopts an ordinance assessing real property within the City of Mobile for ad valorem taxation shall describe in said ordinance the area which has previously been subject to the city's ad valorem taxation and shall describe in addition thereto such other areas within the boundaries as set out in section one [sic] above in which the city commission is furnishing all of the above described services during the year for which said ad valorem tax is being levied; and said ordinance shall also describe the areas within the City of Mobile where all of said services are not being rendered and shall exempt such areas from city ad valorem taxation for said year. * * *" No city ad valorem taxes were levied

against Highpoint Estates until the city passed Ordinance No. 50–049 on May 11, 1965.

The original bill seeking a declaration of rights was filed by complainants for themselves and other property owners in Highpoint Estates. The bill alleged the passage of Act No. 18, quoted Section 3 of the Act, alleged the passage of City Ordinance No. 50–049 and alleged that a justiciable controversy existed between them and the city in that the city "had not complied with the conditions and provisions of Act. No. 18."

Amendments to the bill contained a letter written by the mayor to one of the taxpayers on April 1, 1966, that their money paid for city ad valorem taxes would be refunded if the city failed to render "complete services" by October 1, 1966. But on January 17, 1967, one of the property owners received a letter from the city clerk stating that the city commissioners had instructed the city attorney to obtain a declaratory judgment to determine the legality of the refunds.

The demurrer to the bill as last amended was overruled and the city filed an answer and cross bill in which, for the first time, the constitutionality of Section 3 of Act No. 18 was challenged. Counsel for the city requested that the attorney general be served and the record shows service of "a CROSS bill of Complaint & Amended Bill" on him by the sheriff of Montgomery County.

On April 25, 1969, a month before the trial was had on May 26, 1969, the instant case was consolidated with the case of Snow v. City of Mobile, 287 Ala. 727, 255 So.2d 11, which was a similar suit brought by property owners of another subdivision, the Riviera de Chien area, where the same issues were involved.

It was undisputed at trial, and conceded here, that the city had not furnished sanitary sewer service to the Highpoint Estates area until November or December of 1968.

The trial court found and decreed that (1) Act No. 18 of the Alabama Legislature is constitutional; (2) Complainants constitute a class consisting of all residents of the Highpoint Estates area; (3) City of Mobile Ordinance No. 50–049 is invalid as to property located in Highpoint Estates because contrary to Act No. 18; (4) any assessment of property in Highpoint Estates pursuant to the ordinance was invalid; (5) any attempted collection of taxes upon such property pursuant to the ordinance was invalid; and (6) the City of Mobile refund all taxes paid pursuant to assessments on such property.

On appeal, we are first faced with a procedural question. We note that counsel for appellant on appeal did not participate in the trial. Appellant contends that complainants never caused the attorney general to be served with their petition for declaratory judgment, that the petition challenged the constitutionality of the city ordinance levying the taxes, and having failed to serve the attorney general, the court never acquired jurisdiction of the action. We cannot agree.

Title 7, § 166, Code 1940, provides in part " * * * and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney-general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

But we do not construe the bill as amended, including the prayer, to do more than seek a declaration of rights of the complainants under the statute, Act No. 18. Issues are raised by the pleadings. The first time any allegation was made that the statute, Act No. 18, was unconstitutional was in the city's answer and cross bill, and the attorney general was served at that stage and notified that the constitutionality of Act No. 18 had been raised in the cause. The fact that the attorney general is not served or does not file a waiver early in the proceedings does not deprive the trial court of jurisdiction. Ex parte Dothan-Houston County Airport Authority, 282 Ala. 316, 211 So.2d 451.

We come now to the merits. Appellant contends that Section 3 of Act No. 18 is unconstitutional in that it violates §§ 104 (25), 104(9), 108, 104(15), 211 and 217 of the Constitution of 1901.

Section 104 begins, "The legislature shall not pass a special, private, or local law in any of the following cases: (25) Exempting property from taxation or from levy or sale."

The only construction of § 104(25) by this court we have found is Opinion of the Justices, 262 Ala. 345, 81 So.2d 277. The pending bill in the legislature levied a county privilege license tax on electric public utilities, but § 6 of the bill exempted distributors or sellers of electricity whose business was not subject to regulation by the Public Service Commission. Question 5 of the request for advisory opinion read: "If H. 39 is duly enacted, would the provisions of Section 6 thereof make the act violative of Section 104(25) of the Constitution?" The answer of six members of the court was:

"Section 104, subsec. (25), of our State Constitution is made the basis of Question 5. In substance, this constitutional provision says that the legislature shall not pass a special, private, or local law exempting property from taxation or from levy or sale. *It is our opinion that subsec. (25) has no application to a law which levies a tax but which also provides for certain exemptions from the tax so levied. We answer your Question 5 in the negative.*" [Emphasis supplied]

It is next contended that Section 3 of Act No. 18 is contrary to Section 104(9) which prohibits the legislature from passing a local law, "(9) Exempting any individual, private corporation, or association from the operation of any general law", and Section 108 which states:

"The operation of a general law shall not be suspended for the benefit of any individual, private corporation, or associ-

ation; nor shall any individual, private corporation or association be exempted from the operation of any general law except as in this article otherwise provided."

Act No. 18 does not purport to exempt any individual, private corporation or association from the operation of any general law. The property involved continued to be subject to all the taxes, state and county, that it had previously been, and Act No. 18 states that it would not be subject to new city taxes until certain services, including sanitary sewers, were furnished by the city. That was the main part of the agreement between the city, the people affected and the legislative delegation. And the city lived up to the agreement from 1956 to 1965 when it first sought to levy city taxes without furnishing all the listed services it had agreed to furnish.

As to Section 108, we find no suspension of any provision of the general law. Appellant states that the general law here involved is Tit. 37, §§ 698–732, Code 1940 (Optional Method of Collecting Municipal Taxes). But the authority to tax is contained in Tit. 37, § 670, which states that "* * * cities and towns may levy taxes upon property and all subjects of taxation liable therefor, * * *." The property here involved had never before been liable for city ad valorem taxes and the very same act which brought the property into the city did not permit liability for such taxes to attach until the city had supplied the listed services, including sanitary sewers. We cannot agree that Section 3 of Act No. 18 violates Sections 104(9) or 108.

■ It is also argued that the statute offends Section 104(15) which prohibits the legislature by local law from "(15) Regulating either the assessment or collection of taxes, * * *."

It is true that the words "assessment" and "levied" are used interchangeably in Section 3 of Act No. 18, and it is clear that they are used in the sense of a "levy"

of taxes. "The assessment and collection of taxes is a wholly distinct power and duty, vested in a distinct body of magistracy, from that of levying a tax. The Constitution [Sec. 104(15)] is aimed at local legislation tending to confuse the authorities in the administration of the elaborate system of laws regulating the assessment and collection of taxes. It is not aimed at the exercise of the sovereign legislative power to levy taxes for lawful purposes by local or special laws. * * * I repeat, the *gravamen* of the act is the *levy* of a special tax, a purely legislative power, while the duties of the various officers in relation to the assessment and collection of taxes are ministerial and sometimes *quasi-judicial.*" Sisk v. Cargile, 138 Ala. 164, 35 So. 114.

The City of Mobile uses the optional method of collecting municipal taxes and Section 3 of Act No. 18 is concerned with the levy, not the assessment or collection of taxes. There is no merit in this contention.

■ Appellant argues that Section 3 of Act No. 18 is contrary to Sections 211 and 217 of the Constitution of 1901. The pertinent part of those sections reads as follows:

"Section 211. All taxes levied on property in this state shall be assessed in exact proportion to the value of such property, * * *."

"Sec. 217. The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate; provided, this section shall not apply to institutions devoted exclusively to religious, educational, or charitable purposes."

Our opinions make it clear that Sections 211 and 217 of the State Constitution do not require that all property be taxed, that they do not prohibit exemptions or a reasonable classification. In re Opinions of the Justices, 234 Ala. 358, 175 So. 690; Lee v. State Tax Commission, 219 Ala. 513, 123 So. 6; State v. Alabama Power Co., 254 Ala. 327, 48 So.2d 445.

In Monroe Bond & Mortgage Co. v. State ex rel. Hybart, 254 Ala. 278, 48 So. 2d 431, this court said regarding the equal protection clause of the Fourteenth Amendment and Sections 211 and 217:

"* * * The discrimination which violates constitutional rights is that which results from applying a percentage of the fair and reasonable market value of the property in excess of that systematically used in respect to other property in the county and that this results from a purpose or design to discriminate against the taxpayer, either specially or as a member of a class; but that if there is a fair and honest judgment manifested in fixing the assessed value and a purpose to deal fairly without discrimination by a systematic method, the principle of inequality is not manifest. * * *"

As already noted, the property in question was not subject to any city taxation prior to the effective date of Act No. 18 and that act merely continued that status until certain enumerated services, including sanitary sewers, already being furnished to property inside the city before the annexation, were furnished to the property in the annexed area. Those services were being furnished at the time of the trial and there is no contention that the city could not legally levy taxes on the property subsequent to the furnishing of the services listed in Act No. 18. The discrimination would have been against the new property brought into the city if the tax had been levied prior to the furnishing of city services.

One of the methods of extending city limits is provided in Tit. 37, §§ 138–187, Code 1940, which require an election by the people involved in the new territory. It is interesting to note that Tit. 37, § 153 provides:

"All territory brought within the corporate limits of a city under the provisions of this article, and all property having a situs within such territory, shall be exempt from city taxation or the pay-ment of taxes to the city for the period of not less than ten nor more than fifteen years from the time when such territory is brought within the corporate limits of the city, which period of exemption shall be fixed in the resolution passed by the council or governing body of the city authorized under the provisions of section 139 of this title, except as provided in sections 154 and 155 of this title."

This section has been in our Codes since the Code of 1907. The legislature has always recognized that some inducement was necessary to get people to vote to have their property annexed to a city and we are aware of no case in which it has ever been held that such exemption resulted from a purpose or design to discriminate against the taxpayers already living within the city.

We find no intention in the act to make a systematic and intentional discrimination. On the other hand, it appears that there was a fair and honest judgment manifested and a purpose to deal fairly without discrimination by a systematic method and that there was no principle of inequality manifested.

◼ Finally, appellant argues that Act No. 18, having a severability clause, would still be effective to extend the city limits even though Section 3 were declared unconstitutional.

In Allen v. Louisiana, 103 U.S. 80, 26 L. Ed. 318, the Supreme Court of the United States said:

"It is an elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected. 'But,' * * * 'if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the

legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.'
* * *"

This was quoted with approval in International Textbook Co. v. Pigg, 217 U.S. 91, 3C Sup.Ct. 481, 54 L.Ed. 678. That same court held in Spraigue v. Thompson, 118 U.S. 90, 6 Sup.Ct. 988, 30 L.Ed. 115, that if a clause in a statute which violates the Constitution cannot be rejected without causing the act to enact what the legislature never intended, the whole statute must fall.

In our case of Wilkinson v. Stiles, 200 Ala. 279, 76 So. 45, this court said:

"It is the general rule of statutory construction that if by striking out a void exception, proviso, or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part. Lewis' Sutherland on Statutory Construction, § 306, and cases cited under notes 67 and 68. The foregoing section 306 was quoted from and approved in the case of State ex rel. Collman v. Pitts, 160 Ala. 139, 49 So. 441, 686, 135 Am. St.Rep. 79. If a clause in a statute which violates the Constitution cannot be rejected without causing the act to enact what the Legislature never intended, the whole statute must fall. Spraigue v. Thompson, 118 U.S. 90, 6 S.Ct. 988, 30 L.Ed. 115; Marsh v. Hanly, 111 Cal. 368, 43 P. 975; Kelley v. State, 6 Ohio St. 269. Here we have a clause expressly excepting cities of a population of 35,000 or more, and to strike said clause and uphold the rest of the act would extend the law to every city in the state, although the Legislature said that it should not do so. * * *"

This principle is restated in Alabama Public Service Commission v. AAA Motor Lines, Inc., 272 Ala. 362, 131 So.2d 172.

Here the legislature, in Act No. 18, deprived the inhabitants of the 64 square miles of annexed territory of the right to vote on whether they desired to be annexed to Mobile or not. Had they been given that right, they could have had a period of up to fifteen years immunity from city taxation, Tit. 37, § 153. But in lieu of the privilege of voting on annexation, the legislature, in Section 3 of the act, provided that the property should not be subject to a levy for ad valorem taxes until the property was served by the enumerated municipal services. Section 3 was as important to Act No. 18 as consideration is to a deed. The provisions of Section 3 made the bill acceptable and passable, and the legislative delegation would not introduce the bill until the city commission agreed and advertised the bill containing that provision.

The city lived up to the agreement for nine years. It is not cast in too favorable a light to try to begin collecting taxes for the first time before it performs the consideration which it publicly advocated and promised in order to more than double its corporate territory. As we said in Water Works and Sanitary Sewer Board of City of Montgomery v. Campbell, 267 Ala. 561, 103 So.2d 165, "The legal obligation and morality of the city or one of its boards should equal that of the market place."

The only case cited by appellant in support of its position is Allen v. Walker County, 281 Ala. 156, 199 So.2d 854, but the author of that opinion, Harwood, J., was careful to insert the following language, " * * * If the act thus deleted of the invalid part is competent to stand without the invalid part, and leaves an enactment complete within itself, sensible, and capable of being executed, it will stand, *unless the two parts—the valid and invalid —are so inseparable as to raise the pre-*

*sumption that the Legislature would not have enacted the one without the other. * * *"* [Emphasis supplied]

We are satisfied that with the exclusion of Section 3, the act is not in accord with the legislative intent and the whole would be affected if it were held to be unconstitutional.

No reversible error has been presented in brief and the decree of the trial court is due to be affirmed.

Affirmed.

HEFLIN, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.